UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

PATRICIA L. BEACH,                    )
                                      )
            Plaintiff,                )
                                      )        No. 4:10-cv-94
v.                                    )
                                      )        *Mattice / Lee*
COMMISSIONER OF SOCIAL SECURITY,      )
                                      )
            Defendant.                )

## REPORT AND RECOMMENDATION

Plaintiff Patricia Beach brought this action pursuant to 42 U.S.C. §§ 405(g) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her supplemental security income ("SSI") and disability insurance benefits ("DIB"). Both Plaintiff and Defendant have moved for summary judgment [Doc. 16 & 25]. Plaintiff alleges the ALJ failed to give proper weight to the opinion of Plaintiff's treating physician and did not properly consider Plaintiff's subjective complaints, and further alleges the Appeals Council did not consider evidence submitted after Plaintiff appealed the ALJ's decision. For the reasons stated below, I **RECOMMEND** that (1) Plaintiff's motion for summary judgment [Doc. 16] be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 25] be **GRANTED**; and (3) the decision of the Commissioner be **AFFIRMED**.

# I.  ADMINISTRATIVE PROCEEDINGS

Plaintiff initially filed her application for SSI and DIB on November 7, 2006, alleging disability as of February 17, 2005 (Transcript ("Tr.") 85-90).  After Plaintiff's claim was denied initially and upon reconsideration, she requested a hearing before the ALJ (Tr. 35-54).  The ALJ held a hearing on January 27, 2009, during which Plaintiff was represented by an attorney (Tr. 20-34).  The ALJ issued his decision on April 27, 2009, and determined Plaintiff was not disabled because she could perform her past relevant work (Tr. 11-19).  The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final, appealable decision of the Commissioner (Tr. 1-3, 6).  Plaintiff timely filed the instant action seeking judicial review of the Commissioner's decision on December 17, 2010 [Doc. 2].

# II.  FACTUAL BACKGROUND

## A.  Education and Plaintiff's Testimony

Plaintiff was 45 years old, a younger individual, at the time of the hearing and the ALJ's decision (Tr. 23).  Plaintiff had completed the tenth grade and later received her GED (Tr. 23).

Plaintiff testified at the hearing as follows: she suffered from irritable bowel syndrome ("IBS") and migraine headaches and had stopped working in February of 2005 because her IBS was causing significant problems (Tr. 24, 27).  Plaintiff testified that she would double over with pain after eating anything and would have to go to the bathroom within 15 minutes, resulting in bathroom visits 20-30 times a day (Tr. 28).  Plaintiff sought treatment for her IBS symptoms, but she missed many days of work in the meantime (Tr. 28).  After seeing a specialist, Plaintiff's IBS was generally under control until the medication stopped working (Tr. 29).  Plaintiff worked for a couple of months at a packing plant when she felt able to go back to work, but began experiencing dizziness,

2

blackouts and migraines (Tr. 29). Plaintiff's IBS continued to bother her and was never completely under control; at best, she still had to go to the restroom five times a day (Tr. 31-32).

Plaintiff had experienced persistent migraines for many years, but in 2006, they became more severe and she experienced migraines three or four times a week (Tr. 30). Plaintiff would become sick at the beginning of the migraine and could not immediately take her medication; after she did take her medication, sometimes it helped and sometimes she would need to take another pill (Tr. 30-31). Plaintiff's migraines were getting worse and her doctor recommended an MRI, but she could not visit the doctor because of insurance issues (Tr. 32).

Plaintiff also sought treatment from a neurologist and was diagnosed with degenerative disc disease (Tr. 29-30).

B.    **Medical Records**[1]

Plaintiff's records from Dr. Douglas Burchette date back to at least May 1991 and document years of headache problems (Tr. 207-26). On December 28, 2004, Plaintiff saw Dr. Lawrence Shull for the first time after moving to Tennessee from Ohio (Tr. 255). Plaintiff reported problems with gastroesophageal reflux disease for the last two years and a history of colon polyps (Tr. 255). During a visit on January 25, 2005, Plaintiff reported recent issues with nausea and diarrhea and was under a lot of stress; Dr. Shull diagnosed Plaintiff with IBS (Tr. 263). Dr. Shull noted on February 2, 2005 that Plaintiff's medication was not helping and changed her medication; on February 8, 2005, Plaintiff's new medication was not working well and Plaintiff continued to have loose stools, which prevented her from returning to work (Tr. 257, 262). Dr. Shull prescribed Donnatal (Tr. 257).

---

[1] Plaintiff has not challenged the ALJ's determination as to her mental impairments; as such, this summary will focus on Plaintiff's physical impairments.

3

In May 2005, Plaintiff reported the Donnatal helped for a short time but did not help any longer, and Dr. Shull prescribed Bentyl (Tr. 257).

On May 11, 2005, Plaintiff presented to Dr. Bob Herring for her IBS treatment (Tr. 286-88). Plaintiff reported daily loose, watery stools of moderate severity after eating and had tried several different medications with little luck (Tr. 286). Plaintiff had a colonoscopy with biopsy on May 24, 2005 (Tr. 295) and a small bowel series test on May 25, 2005, which was normal (Tr. 289). Plaintiff saw Dr. Herring again on June 7, 2005, and was much improved with new medications (Tr. 284). On October 18, 2005, Plaintiff complained of breakthrough diarrhea and Dr. Herring collected stool samples for testing and increased Plaintiff's medication (Tr. 283). Plaintiff's stool studies were all negative (Tr. 290-91). During a November 1, 2005 visit, Plaintiff reported her diarrhea was much improved with the addition of loperamide and she believed it may be secondary to stress stemming from problems with her son's behavior (Tr. 282).

Plaintiff saw Dr. Shull again on April 20, 2006, when she reported suffering from migraines for the last 10 years and reported a recent migraine that had lasted for two days (Tr. 258). Dr. Shull noted that Plaintiff was following with Dr. Herring for her IBS and prescribed different medication for Plaintiff's migraines (Tr. 258). Plaintiff reported continuing problems with migraines on May 4, 2006 and that Florecet was not helping much (Tr. 260). Dr. Shull ordered an MRI of Plaintiff's brain (Tr. 260). Plaintiff had the MRI of her brain on May 10, 2006, the results of which were within normal limits except for right maxillary sinus retention cysts (Tr. 238). During a visit on May 11, 2006, Dr. Shull noted the MRI was essentially normal and that Plaintiff continued to miss work due to migraines (Tr. 260). Dr. Shull ordered an x-ray of Plaintiff's cervical spine and noted Plaintiff would have a neurology consultation with Dr. Atalla (Tr. 260). On the same day, Plaintiff's

4

x-ray of her cervical spine was normal except for a congenital block anomaly (Tr. 239).

On May 15, 2006, Plaintiff saw Dr. Bill Atalla for her neurology consultation and complained of headings with stabbing, "ice-pick" pains on the top of the head (Tr. 244-46). Dr. Atalla ordered an MRI of her cervical spine and prescribed medications (Tr. 246). On May 18, 2006, Plaintiff had an MRI of her cervical spine, which showed small right sided disc protrusions in two areas and three minimal central disc bulges, but no significant disc herniations or nerve root impingement (Tr. 236). Plaintiff saw Dr. Atalla again on May 19, 2006 and reported two stabbing headaches since her last visit (Tr. 241-43). Dr. Atalla approved an increase in her medication and noted Plaintiff should follow up with him in August (Tr. 243).

Plaintiff went to neurologist Dr. Deka Efobi for a second opinion on September 11, 2006 (Tr. 250). Plaintiff told Dr. Efobi that Dr. Atalla said she might need cervical spine surgery for her degenerative disc disease and reported infrequent headaches that lasted four to five days at a time with no relief (Tr. 250). Dr. Efobi wanted to repeat Plaintiff's cervical spine MRI because the May film was of poor quality, recommended physical therapy for Plaintiff's neck pain and gave her a referral, and prescribed different medication (Tr. 250). Plaintiff had an MRI of her cervical spine that same day, which showed no herniated disc disease or significant abnormality in the tissues of the neck (Tr. 251). Plaintiff did not start physical therapy with the referral from Dr. Efobi and stated she would go elsewhere for therapy (Tr. 252). Plaintiff returned to Dr. Efobi on November 29, 2006 and complained of neck pain and mid back pain (Tr. 314-15). Plaintiff had an x-ray of her thoracic spine the same date, which showed very minimal degenerative changes (Tr. 321).

On February 14, 2007, Dr. Deborah Webster-Clair filled out a physical residual functional capacity ("RFC") assessment based on Plaintiff's records (Tr. 302-09). Dr. Webster-Clair opined

Plaintiff could occasionally lift up to 50 pounds, could frequently lift up to 25 pounds, could stand and/or walk for a total of six hours in an eight-hour workday, could sit for a total of six hours in an eight-hour workday, and was unlimited in her ability to push and/or pull (Tr. 303). Dr. Webster-Clair noted that Plaintiff could only occasionally climb ladders, ropes, or scaffolds and crawl, but could frequently climb ramps or stairs, balance, stoop, kneel, and crouch (Tr. 304). Dr. Webster-Clair noted that Plaintiff's allegations were only partially credible and characterized Plaintiff's impairments as relatively stable and controlled such that they were not severe (Tr. 307-09).

Plaintiff saw Dr. Efobi again on March 7, 2007 and complained of neck pain and anxiety (Tr. 311-13). After that, Plaintiff began following with Dr. Lynette Adams in late April and May 2007 (Tr. 391, 397-99). On June 11, 2007, Plaintiff reported to Dr. Adams that her neurologist was no longer taking her TennCare insurance and that she was taking Topamax for migraines (Tr. 393).

On June 26, 2007, Dr. James Gregory filled out a physical RFC assessment (Tr. 332-29). Dr. Gregory's opinion as to Plaintiff's ability to lift and carry, stand and/or walk, sit, and push and/or pull mirrored that of Dr. Webster-Clair (Tr. 333). Dr. Gregory opined Plaintiff could frequently climb ladders, ropes, and scaffolds and crawl and could frequently climb ramps or stairs, balance, stoop, kneel, and crouch (Tr. 334). Dr. Gregory noted that Plaintiff's neck problems should continue to improve with medication and her other allegations were nonsevere (Tr. 339).

On October 11, 2007, Plaintiff complained to Dr. Adams that it had felt like food was sticking in her throat for the last couple of weeks (Tr. 395). Plaintiff saw Dr. Herring on October 24, 2007 and complained of dysphagia, weight loss, and diarrhea that was not completely under control (Tr. 369). Dr. Herring scheduled Plaintiff for an EGD and added Imodium to her medications (Tr. 369). There are no other records from Dr. Herring and it appears that Plaintiff

6

could not have the EGD done due to insurance issues. Plaintiff saw Dr. Adams on March 13, 2008 for refills of her medication and was noted to be doing well (Tr. 389-90).

On August 25, 2008, Dr. Michael Ryan filled out a physical RFC assessment (Tr. 404-11). Dr. Ryan's assessment as to Plaintiff's ability to lift and/or carry, stand and/or walk, sit, and push and/or pull was the same as that opined by Drs. Webster-Clair and Dr. Gregory (Tr. 405). Dr. Ryan opined Plaintiff had no postural limitations and noted Plaintiff's symptoms were partially credible because her impairments would not cause pain to the extent alleged (Tr. 406, 409).

On December 31, 2008, Dr. Efobi filled out a headaches RFC questionnaire and noted Plaintiff experienced nausea, vomiting, photosensitivity, and dizziness due to her headaches (Tr. 426). Dr. Efobi indicated the migraines occurred three to four times a week and could last for two to three days each time (Tr. 426-27). The migraines were triggered by lack of sleep, bright lights and noise exacerbated the pain, and lying in a dark room and Frova were the only things that helped (Tr. 427). Dr. Efobi opined that Plaintiff's prognosis was good but that her impairment would last at least 12 months (Tr. 429). Dr. Efobi further indicated that the migraines would cause Plaintiff to have to take unscheduled breaks during a workday, but it was uncertain how often it would happen or if it would occur on a monthly basis (Tr. 429).

### C.  Supplemental Records

Plaintiff submitted additional medical records to the Appeals Council. At what appears to be the first appointment in these records, Plaintiff sought diazepam refills and Frova samples (Tr. 440). Plaintiff saw Dr. Adams on November 18, 2008 and asked for a diazepam prescription for her IBS because it was expensive to get the medication from Dr. Herring; Plaintiff also asked for Frova samples for her migraines (Tr. 439). On July 9, 2009, Plaintiff complained of migraines occurring

three to four times a week and reported she was taking four medicines for her IBS but was still having diarrhea 20-30 times a day (Tr. 437). On August 7, 2009, Plaintiff saw Dr. Adams for a refill on her diazepam and reported the Frova helped with her migraines, but she was having diarrhea 20 times a day (Tr. 436).

## III. ALJ'S FINDINGS

### A. Eligibility for Disability Benefits

The Social Security Administration determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The process provides:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment-i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities-the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

8

### B.    ALJ's Application of the Sequential Evaluation Process

At step one of this process, the ALJ found Plaintiff had not engaged in any substantial gainful activity since February 17, 2005, the alleged onset date (Tr. 13).  At step two, the ALJ found Plaintiff had the following "severe combination of impairments: migraine headaches; a mild impairment of the cervical spine; and [IBS]" (Tr. 13).  The ALJ discussed Plaintiff's mental impairments at length but concluded any anxiety or depression did not cause more than a minimal limitation in her ability to perform work (Tr. 13-14).  At step three, the ALJ found Plaintiff did not have any impairment or combination of impairments to meet or medically equal any of the presumptively disabling listed impairments (Tr. 15).  The ALJ next determined Plaintiff had the RFC to perform a full range of light work (Tr. 15).  At step four, the ALJ found Plaintiff was able to perform her past relevant work (Tr. 18).  This finding led to the ALJ's determination that Plaintiff was not under a disability as of February 17, 2005 (Tr. 19).

## IV.    ANALYSIS

Plaintiff asserts three arguments to support her contention that the ALJ's decision is not supported by substantial evidence.  First, Plaintiff argues the ALJ improperly gave the opinion of Plaintiff's treating physician little weight.  Second, Plaintiff argues the Appeals Council did not consider the supplemental evidence submitted to it before denying review of her claim.  Third, Plaintiff asserts the ALJ did not properly consider her testimony as to her subjective complaints.

### A.    Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence.  42 U.S.C. § 405(g); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters*, 127 F.3d at 528).  Substantial evidence

is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Id.* (internal quotes omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decisionmakers because it presupposes there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sep. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claim of error without further argument or authority may

be considered waived).

Evidence submitted after the close of administrative proceedings cannot be considered for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Similarly, where the claimant presents new evidence to the Appeals Council, but the Appeals Council declines to review the ALJ's decision, that new evidence may not be considered during review on the merits. *Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993). Instead, the new evidence can be considered only for purposes of remand pursuant to sentence six of 42 U.S.C. § 405(g), which authorizes the court to remand a case for further administrative proceedings "if the claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).

B.      **Dr. Efobi's Opinion**

Plaintiff argues the ALJ improperly stated that Dr. Efobi's opinion was not inconsistent with the opinions of the state agency physicians because Dr. Efobi's headache questionnaire would result in a finding of disability if given the appropriate weight, and the state agency physicians opined Plaintiff could perform medium work [Doc. 17 at PageID#: 94]. Plaintiff asserts nothing in Dr. Efobi's assessment of the severity of Plaintiff's migraines was contradicted by Plaintiff's other medical records [*id.* at PageID#: 95]. Plaintiff further asserts that Dr. Efobi's opinion should be given greater weight because she is a specialist, while the two state agency physicians are an internal medicine physician and a gynecologist respectively [*id.* at PageID#: 96]. Plaintiff claims the ALJ erred in his discussion of Dr. Efobi's opinion. Specifically, Plaintiff asserts the ALJ did not properly address the opinion and that, if the ALJ had completed the process appropriately, Plaintiff would

11

be found to be disabled [*id.* at PageID#: 94-96, 99]. Plaintiff contends the ALJ's reasons for not affording greater weight to Dr. Efobi's opinion are not "good reasons" because they are not supported in the record [*id.* at PageID#: 99].

The Commissioner argues the ALJ reasonably did not give great weight to Dr. Efobi's opinion because it was made nearly two years after Dr. Efobi last saw Plaintiff and there is no indication Dr. Efobi examined Plaintiff on this date; Dr. Efobi noted it was unclear how often Plaintiff would need to take unscheduled breaks during work due to headaches, but this was inconsistent with Dr. Efobi's estimate in the questionnaire that Plaintiff suffered from headaches three to four times a week and inconsistent with Dr. Efobi's own treatment notes that Plaintiff had infrequent headaches; and it is unknown whether Dr. Efobi reviewed Plaintiff's entire medical record, as the state agency physicians did [Doc. 26 at PageID#: 153]. The Commissioner further asserts the ALJ's decision was reasonable in light of recent records that Plaintiff was doing well and the fact that Plaintiff had never been hospitalized for migraines [*id.* at PageID#: 154].

The law governing the weight to be given to a treating physician's opinion, often referred to as the treating physician rule, is settled: A treating physician's opinion is entitled to complete deference if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)) (alteration in original). Even if the ALJ determines that the treating source's opinion is not entitled to controlling weight, the opinion is still entitled to substantial deference commensurate with "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as

a whole, and the specialization of the treating source." 20 C.F.R. § 404.1527(d)(2); SSR 96-2p; *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 192 (6th Cir. 2009). The ALJ is not required to explain how he considered each of these factors, but must nonetheless give "good reasons" for rejecting or discounting a treating physician's opinion. *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004) (quoting SSR 96-2p). Failure to give good reasons requires remand, even if the ALJ's decision is otherwise supported by substantial evidence, unless the error is de minimis. *Id.* at 544, 547.

The ALJ determined Dr. Efobi's opinion was at least somewhat supported by the record based on the treatment relationship with Plaintiff and because it was generally credible and consistent with the record (Tr. 17). The ALJ therefore gave Dr. Efobi's opinion some weight and also afforded some weight to the opinions of Dr. Gregory and Dr. Webster-Clair because those opinions also seemed to be consistent with the record (Tr. 17-18). The ALJ noted, however, that he could not give Dr. Efobi's opinion controlling weight to reach a finding of disability for the following reasons, among others:

> [T]he fact that the claimant has migraine headaches which could impair her ability to work for a day or two is not sufficient evidence that supports a lack of capacity for full-time work. I note the claimant has not been hospitalized for treatment of these headaches, there is a lack of any credible evidence as to the frequency and duration of the alleged headaches, and she has reported significant activities of daily living which belies the allegation of headaches 3-4 times a week which incapacitate her for 2-3 days each. . . . I have concluded the claimant would not experience absences from work due to the headaches [] which would be excess of generally allowable

13

sick days.

(Tr. 18).

Plaintiff takes issue with the ALJ's first sentence in this section, arguing that it is vague and unclear. It appears to be derived from Dr. Efobi's uncertainty about how often Plaintiff would miss work due to migraines; that is, even if Plaintiff's migraine headaches were severe enough to incapacitate her for a day or two at a time, there is no clear evidence in the record as to how frequently this would occur, as the ALJ noted later in his decision. In fact, Dr. Efobi declined to assert how often Plaintiff's migraines would cause her to be absent from work, simply writing that it was uncertain to quantify (or uncertain to quantity) and it was uncertain how often Plaintiff would need to take unscheduled breaks during workdays (Tr. 429). In addition, although Plaintiff attacks the ALJ's statement about her lack of hospitalization and argues that there is no requirement that a claimant be hospitalized for migraines to be severe, it seems the ALJ was making this statement in conjunction with the overall lack of evidence in the record supporting the frequency and severity of Plaintiff's migraines. Had Plaintiff been hospitalized for severe migraines, her statements as to frequency and severity might be better supported; as it was, however, the medical records available did not speak to this degree of severity beyond containing Plaintiff's subjective complaints.

The ALJ further commented on the inconsistencies between Plaintiff's reported daily activities and her assertion that each migraine occurring three to four times a week incapacitated her for two to three days each time, as such an assertion would seem to eclipse all daily activities over an extended period of time. It is clear from the record that Plaintiff suffers from migraines and is on medication for this problem, but the ALJ found that Plaintiff's allegations as to frequency and severity were not supported by objective evidence in the record, and Dr. Efobi's opinion appears to

14

be repeating Plaintiff's subjective complaints and does not seem to be an opinion outlining frequent, debilitating migraines that prevent Plaintiff from working a normal schedule.

Besides these reasons, the ALJ also took note of Plaintiff's short treatment history with Dr. Efobi and the length of time between Plaintiff's last appointment with Dr. Efobi and the completion of the headache RFC questionnaire. Plaintiff had only three appointments with Dr. Efobi from September 2006 to March 2007 and did not see Dr. Efobi again until the questionnaire was completed in December 2008.[2] Although Plaintiff claims she was examined by Dr. Efobi during that visit, there is no record of any examination. Therefore, it appears Plaintiff had a total of three appointments with Dr. Efobi and returned nearly two years after the last appointment to have Dr. Efobi fill out the headaches questionnaire. Based on the length of time that passed after Plaintiff's last visit, the inconsistencies in the questionnaire as to Plaintiff's reports of migraine frequency and Dr. Efobi's inability to estimate how often they might affect Plaintiff's work schedule, and the absence of other evidence in the record supporting the frequency and severity Plaintiff alleged, the ALJ reasonably determined that he could not give controlling weight to Dr. Efobi's opinion. After reviewing the ALJ's decision and Plaintiff's medical records, I **FIND** the ALJ followed the appropriate procedure in assessing Dr. Efobi's opinion and outlined good reasons for giving it less than controlling weight. The ALJ did give some weight to Dr. Efobi's opinion, notwithstanding its vagueness, and gave some weight to the opinions of the state agency physicians, who opined Plaintiff could perform medium work, to reach the conclusion that Plaintiff could perform light work and absences due to her physical impairments would not be beyond any sick day allowance (Tr. 17-18).

---

[2] The Commissioner does not dispute that Dr. Efobi is a "treating" physician.

Although Plaintiff argues that Dr. Efobi's opinion should be given greater weight because it comes from a specialist in neurology, rather than the state agency physicians less qualified to opine about migraines, the ALJ did not reject Dr. Efobi's opinion completely in favor of the opinions of an internal medicine physician and a gynecologist; instead, he gave some weight to each opinion based on each opinion's consistency with the record and in light of Plaintiff's complaints.

I **CONCLUDE** the ALJ's treatment of Dr. Efobi's opinion was proper and his decision to give it less than controlling, and only some, weight was supported by substantial evidence.

### C.       Supplemental Evidence Before Appeals Council

Plaintiff argues the Appeals Council did not review additional medical records submitted to it before declining to review Plaintiff's claim [Doc. 17 at PageID#: 103-04]. Plaintiff urges remand of her claim to ensure the entire record is considered [*id.* at PageID#: 104]. The Commissioner concedes the Appeals Council did not consider the evidence when it denied review of Plaintiff's claim; however, the Appeals Council has now sent a letter to Plaintiff's counsel to explain why the additional evidence did not warrant review of the ALJ's decision [Doc. 26 at PageID#: 158]. The Commissioner asserts the evidence was not material to the ALJ's decision and it was harmless error for the Appeals Council not to consider the evidence earlier [*id.*]. The Commissioner argues that Plaintiff cannot meet the requirements for remand under sentence six 42 U.S.C. § 405(g) because she cannot establish the new records are material, as they are consistent with the ALJ's decision and do not contain any objective evidence to substantiate her symptoms [*id.* at PageID#: 158-59].

Plaintiff does indeed appear to be seeking a remand pursuant to sentence six of 42 U.S.C. § 405(g), as the Court cannot consider evidence submitted to the Appeals Council after the ALJ's decision for purposes of substantial evidence review if the Appeals Council declines to review the

claim. *Cline*, 96 F.3d at 148. The Court can, however, remand the case for further proceedings if the evidence is new and material and there was good cause for not presenting it earlier. *Id.* The evidence is material "only if there is a 'reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence.'" *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010) (quoting *Foster*, 279 F.3d at 357)); *see also Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007) ("Material evidence is evidence that would likely change the Commissioner's decision").

The additional records consist of four visits with Dr. Adams over a period of several months and generally document her complaints to Dr. Adams. In what appears to be the first record,[3] Plaintiff seeks medication refills for her IBS and medication samples for migraines and complains of frequent migraines (Tr. 440). In the second record, dated November 2008, Plaintiff again sought Frova samples for her migraines and refills of diazepam for IBS symptoms because it was too expensive to get them filled by Dr. Herring (Tr. 439). Plaintiff made no complaint to Dr. Adams regarding the frequency of diarrhea or migraines during this visit (Tr. 439). Plaintiff saw Dr. Adams next on July 9, 2009 to obtain a refill of diazepam (Tr. 437). In that appointment she sought samples of migraine medication and complained of migraines occurring three to four times a week and diarrhea 20-30 times a day (Tr. 437). The final record, dated August 7, 2009, noted that Plaintiff once again sought a refill for diazepam and samples of migraine medication and complained of diarrhea 20 times a day (Tr. 436).

I **FIND** the additional evidence is not material. Plaintiff makes no argument that the

---

[3] The page was copied or faxed so that the date at the top of the page is unreadable, but as the next record is dated November 2008, it seems likely that this record was dated sometime between March 2008 (as this visit already appears in the record) and November 2008.

evidence is material, and the Commissioner fairly characterizes the supplemental records as being consistent with the ALJ's decision and lacking in objective evidence of the severity of Plaintiff's impairments. Plaintiff made some complaints to Dr. Adams, but she generally sought medication refills and samples of migraine medications during each visit, and there is no objective evidence or testing performed or ordered by Dr. Adams that might substantiate Plaintiff's complaints. Thus, the records are not inconsistent with the ALJ's analysis, as they primarily contain Plaintiff's subjective complaints but are similarly unsupported by objective evidence. While the records may document Plaintiff's continued problems with IBS and migraines, they do not add additional, credible evidence to the record to support the frequency and severity of these problems, such that a finding of disability could be made. The evidence is not material because it is highly unlikely that consideration of the new evidence would result in a finding of disability; as such, I **CONCLUDE** that remand of Plaintiff's claim is not necessary.

### D. ALJ's Credibility Determination

Plaintiff's final argument focuses on the ALJ's failure to properly consider Plaintiff's subjective complaints [Doc. 17 at PageID#: 105]. Plaintiff argues the ALJ merely found her subjective complaints were not credible to the extent they were inconsistent with his RFC determination, but the only evidence in the record with which Plaintiff's complaints are inconsistent are the opinions of the state agency physicians [*id.*]. Plaintiff asserts her subjective complaints are consistent with Dr. Efobi's opinion and her constant treatment of migraines with medication [*id.* at PageID#: 107]. Plaintiff characterizes the ALJ's statement as to her credibility to be "boilerplate" and argues the ALJ did not follow the regulations when he assessed credibility because he did not provide sufficient reasons for his credibility finding [*id.* at PageID#: 107-08]. Plaintiff points to

18

various parts of the record which she alleges support her subjective complaints in contrast with the ALJ's determination and argues the ALJ did not adequately consider the nonexertional limitations Plaintiff would experience due to her IBS and migraines [*id.* at PageID#: 108-10]. Plaintiff asserts that if the ALJ had considered these additional limitations, Plaintiff would be considered disabled, and the ALJ's failure to do so requires reversal or remand [*id.* at PageID#: 110-11].

The Commissioner asserts the ALJ made several findings with regard to Plaintiff's credibility based on statements of her physicians that her conditions were controlled by medication and that Plaintiff was doing well [Doc. 26 at PageID#: 155-56]. The Commissioner argues the ALJ noted Plaintiff's objective testing was generally normal and that Plaintiff's daily activities were too extensive to square with her subjective complaints [*id.* at PageID#: 156-57]. The Commissioner points out inconsistencies in Plaintiff's own statements about her activities and argues the ALJ was not required to accept all of Plaintiff's subjective statements about her complaints and her activities [*id.* at PageID#: 157].

An ALJ must consider "the claimant's allegations of his symptoms. . . with due consideration to credibility, motivation, and medical evidence of impairment." *Atterberry v. Sec'y of Health & Human Servs.*, 871 F.2d 567, 571 (6th Cir. 1989). Credibility assessments are properly entrusted to the ALJ, not to the reviewing court, because the ALJ has the opportunity to observe the claimant's demeanor during the hearing. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). Where an ALJ's credibility assessment is fully explained and not at odds with uncontradicted evidence in the record, it is entitled to great weight. *See King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984) (noting the rule that an ALJ's credibility assessment is entitled to "great weight," but "declin[ing] to give substantial

deference to the ALJ's unexplained credibility finding," and holding it was error to reject uncontradicted medical evidence). *See also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009) (ALJ was entitled to "rely on her own reasonable assessment of the record over the claimant's personal testimony"); *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994) (ALJ's credibility assessment is entitled to substantial deference).

The ALJ cannot base his credibility finding on intuition, but must give "specific reasons for the finding on credibility, supported by the evidence in the case record," which are "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the [claimant's] statements and the reasons for that weight." Social Security Ruling ("SSR") 96-7p (1996); *Rogers*, 486 F.3d at 247-48. "Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect." *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 863 (6th Cir. 2011). According to agency regulations, the ALJ must consider a claimant's credibility in light of all the evidence in the record, including the claimant's own statements regarding the nature and severity of her symptoms, her daily activities, her prior work record, her physicians' medical diagnoses, prognoses, and opinions, her medications and other treatments, and any other relevant factors. SSR 96-7p. The ALJ must consider these factors, but he is not required to devote written attention to each piece of evidence he considers. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006). Instead, the applicable regulations provide that the ALJ must state the reasons for his assessment of the claimant's credibility, and those reasons must themselves be grounded in the record. SSR 96-7p.

The ALJ did make a somewhat generic statement in his decision about Plaintiff's complaints

not being credible to the extent they were inconsistent with his RFC determination, but as the Commissioner points out, the ALJ also made several references to Plaintiff's medical records that contradicted or undermined her complaints at other places in his decision to satisfy the above factors. The ALJ wrote in relevant part as follows:

> On September 11, 2006, the claimant was referred to Dr. Deka Efobi, a neurologist, for a second opinion about the headaches. <u>The claimant reported her headaches occur infrequently</u>; however, when they do, she said they can last for 4-5 days. . . . [Plaintiff's] second MRI, dated September 11, 2006, was completely normal [5F/3]. Dr. Efobi recommended the claimant begin physical therapy for her neck pain, but there is no record that she followed this advice.
>
> . . .
>
> Treatment records also indicate the claimant has been treated for irritable bowel syndrome (IBS), which is characterized by abdominal cramping and diarrhea [6F, also 17F]. Dr. Lawrence Shull, M.D., noted in February 2005, that the claimant reported she was not then working; however, he noted she was "improved" by June 2005 with no complaints of pain or diarrhea [7F/5, see also pp 3]. Two years later, on October 24, 2007, the claimant reported diarrhea again and this time, she was given Imodium [13F/2]. The claimant was also treated by Dr. Bob Herring, M.D., a gastroenterologist, from May 11, 2005 through October 24, 2007. Dr. Herring prescribed medication for complaints of IBS related diarrhea which was generally adequately controlled. The diarrhea was described as occurring after meals and was of a moderate severity when not controlled [7F, 14F].
>
> . . .
>
> The claimant's pain questionnaire, dated August 1, 2008, reflects that the pain from her migraine headaches, neck pain and IBS symptoms are essentially excruciating. However, at the claimant's last visit to her treating physician, in March 2008, Dr. Adams reported the claimant was "doing well" [17F]. In fact, there was no mention of migraine headaches, neck pain or IBS symptoms, including the chronic diarrhea the claimant described in the questionnaire [16E].

(Tr. 16-17). The ALJ went on to summarize Plaintiff's daily activities and capabilities and discussed

Dr. Efobi's opinion as described *supra* (Tr. 17). Specifically, with the above statements, the ALJ made note of Plaintiff's normal test results; Plaintiff's statement to Dr. Efobi during her initial visit that her headaches occurred infrequently; Plaintiff's failure to follow up with the physical therapy referral from by Dr. Efobi; records indicating Plaintiff's IBS was controlled by medication and was moderate in severity when not controlled; records from Dr. Adams in March 2008 indicating that Plaintiff was doing well and had not complained of migraines, neck pain or IBS, which contradicted her pain questionnaire a few months later; her activities of daily living; and Dr. Efobi's inability or unwillingness to estimate how often migraines would cause Plaintiff to take breaks or be absent from work, in spite of Dr. Efobi's statement that Plaintiff experienced migraines three to four times a week that would incapacitate her for two to three days at a time (Tr. 16-18). Essentially, the ALJ pointed out the evidence in the record which contradicted Plaintiff's hearing testimony by juxtaposing her diagnoses, treatment records and recommendations, and medications with her own statements as to the severity of her conditions. By addressing these records, the ALJ determined that the entirety of the evidence in the record did not fully support Plaintiff's claim of migraine symptoms being as consistently debilitating as she described or her claim of IBS symptoms causing her to have diarrhea so often that she would be unable to work a normal workday schedule.

As for Plaintiff's argument that the migraines and IBS would cause her significant nonexertional limitations which would mandate vocational expert testimony, these limitations are largely derived from Plaintiff's subjective complaints, which the ALJ found were not entirely credible for the reasons stated above. The requirements in Dr. Efobi's opinion–that Plaintiff lay in a dark room for two to three days to recover from her migraines–would be of significance only if the ALJ had credible evidence regarding how often this would be required, but evidence besides

Plaintiff's subjective complaints as to the frequency of her migraines is absent from the record. The ALJ noted that even though Dr. Efobi stated Plaintiff's headaches occurred 3-4 times a week, Dr. Efobi's opinion did not unequivocally state that Plaintiff would be required to take unscheduled breaks if a headache occurred at work and was unable to specify how frequently Plaintiff might need to be absent from work due to headaches (Tr. 17). Plaintiff's nonexertional limitation necessary due to IBS–frequent access to a bathroom–is again derived from her subjective complaints of severe and frequent diarrhea, notwithstanding her treatment with Dr. Herring,[4] normal test results, and use of medication to control the symptoms which Plaintiff reported were moderate.

I **FIND** the evidence in the record supports the ALJ's determination that Plaintiff's subjective complaints concerning her IBS problems and migraines were not entirely credible. The ALJ is in the best position to assess Plaintiff's credibility and it appears that he carefully reviewed all evidence in the record, including Plaintiff's testimony, her pain questionnaires and other forms submitted to the Commissioner, and all medical records during his decisionmaking process. I **FIND** the ALJ properly considered and discussed Plaintiff's credibility in the context of the necessary factors outlined above.

I **CONCLUDE** the ALJ considered all of the medical evidence in the record and Plaintiff's own complaints to properly reach his conclusion as to credibility and, after considering all of Plaintiff's arguments, I **CONCLUDE** the decision of the ALJ was supported by substantial evidence.

---

[4] Plaintiff is correct that the ALJ may have erred when he stated that Plaintiff's IBS was controlled by adjusting meals, as that note does not seem to appear in the record. The ALJ was correct, however, in his statement that her diarrhea was generally controlled by adjusting medications (Tr. 18). Dr. Shull changed Plaintiff's medication several times before Plaintiff began to see Dr. Herring, who also adjusted and added medication as necessary (Tr. 257, 262, 281, 284, 286).

## V. CONCLUSION

Having carefully reviewed the administrative record and the parties' arguments, I

**RECOMMEND** that:[5]

> (1)    Plaintiff's motion for summary judgment [Doc. 16] be **DENIED**.

> (2)    The Commissioner's motion for summary judgment [Doc. 25] be **GRANTED**.

> (3)    The Commissioner's decision denying benefits be **AFFIRMED**.

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[5] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).